SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. BOCKELMAN, OSB #105934**
Assistant United States Attorney
Nicole.Bockelman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-CR-00319-003-AN |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CARLOS RODNEY,** | |
| **Defendant.** | |

### INTRODUCTION

Defendant's case stems from an undercover investigation where defendant participated in the sale of five firearms, including four handguns and a 5.56 caliber IWI rifle. The government recognizes that defendant has no prior felony convictions; however, defendant was an integral part of a significant gun deal facilitated through members of a Norteño street gang that resulted in the sale of five firearms.

**Government's Sentencing Memorandum**                                                      **Page 1**

The facts of the instant offense combined with defendant's role in the gun sale to an undercover agent support the parties' joint recommendation of 63 months prison followed by three years of supervised release. It is the government's position that 63 months' imprisonment imposes consequences for defendant's illegal firearms sale; this Court should impose the jointly recommended 63-month prison term.

## FACTUAL BACKGROUND

### A.    The Offense Conduct

In July of 2023, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began their investigation into Norteño and Varrio Catorce members in the Salem, Oregon area. Investigators learned that Christopher Hermens, a known Varrio Catorce member, was on parole for robbery and was communicating about selling firearms and controlled substances.

An undercover agent with ATF (UC) began communicating with Hermens and they arranged purchases of controlled substances and firearms. On January 23, 2025, the UC and Hermens communicated through text messages and phone conversations and agreed to meet later that day for the sale of cocaine and firearms. Hermens directed the UC to meet in the parking lot of Batteries + Bulbs in Tualatin, Oregon. Hermens arrived at the meet location with three other men including defendant in defendant's vehicle.

When the UC arrived at the parking lot of Batteries + Bulbs, law enforcement conducting surveillance of the deal saw that four people exited from defendant's car, including defendant and Hermens. Once out of the car, defendant and Hermens walked to the trunk of defendant's car. Defendant removed a box from his trunk and took the box to the back passenger area of his

**Government's Sentencing Memorandum**                                                                          **Page 2**

car, where he sat in the backseat. Hermens sat in the driver's seat of defendant's car with a bag of cocaine and a digital scale on the center console while the UC sat in the front passenger seat.

Defendant handed the UC a plastic bag with two firearms and said, "I got the rest in the box". The UC removed the firearms from the bag, examined them and asked if defendant and Hermens had previously fired the guns. Defendant replied, "yeah, I already shot them all, I always clean them before". The UC told defendant and Hermens that the people that the UC sold firearms to may commit crimes with the guns and asked if he should shave the serial numbers from the firearms. Defendant replied, "I don't shave off any numbers 'cause that's a sentence right there".

The UC showed defendant the money the UC brought for the sale and asked if defendant would finish the sale in the undercover vehicle. Defendant and Hermens agreed and they walked to the undercover vehicle to complete the sale of the firearms. The UC asked defendant to explain the prices for the five firearms and defendant told the UC that defendant was getting the Glocks nearly "at cost". Defendant said that he purchased other firearms for "around $1,500 on the street" and added, "sometimes I'll get then for a steal and make 500 bucks off of them". PSR at ¶19.

The UC counted $4,500 and handed the money to defendant. The UC asked defendant if defendant had access to people who could obtain machine gun conversion devices (switches) and defendant said that he did. Once the gun sale was complete, the UC and defendant walked back to defendant's car and the UC sat in the front passenger seat while defendant sat behind the UC. Hermens sat in the driver's seat and put the cocaine in a plastic bag on the scale. The UC counted $660 and handed the cash to Hermens.

**Government's Sentencing Memorandum** **Page 3**

Hermens handed the UC the bag of cocaine.  UC bought an ounce of cocaine from Hermens and five firearms from defendant including a Sig Sauer pistol, a Glock model 48 pistol, a Glock model 20 pistol, a Smith & Wesson pistol and a IWI rifle.



**B.  The Charge**

On February 5, 2026, defendant pleaded guilty to Count Five of the 12-count indictment. Count Five charged that on or about January 23, 2025, in the District of Oregon, defendant intentionally shipped, transported, transferred, caused to be transported or otherwise disposed of the following firearms, to wit:

    (1)  A Sig Sauer pistol, model P320, 9mm, serial #M18-090789;

    (2)  A Glock pistol, model 48, 9mm, serial #BFZD892;

    (3)  A Smith & Wesson pistol, model M&P 45, serial #DUK9289;

    (4)  A Glock pistol, model 20, 10mm, serial #BXML994; and

    (5)  An IWI rifle, model Z-15, serial #Z0024539;

**Government's Sentencing Memorandum**                                                                 **Page 4**

to another person in or otherwise affecting interstate commerce, having reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony as defined in 18 U.S.C. § 932(a); in violation of 18 U.S.C. § 933(a)(1).  PSR at ¶1.

### C.  Guidelines Calculations

The Pre-Sentence Report (PSR) determined defendant's base level to be 20 under USSG § 2K2.1(a)(4)(B)(i)(I) and § 2K2.1(a)(4)(B)(ii)(II), and his total offense level to be 25 after all adjustments. PSR at ¶40.  The parties have no dispute with PSR calculations.

### D.  Felony Criminal History

| Crime | Conviction Date | Jurisdiction | Sentence |
|---|---|---|---|
| Theft of Services (misdemeanor) (Age 18) | 10/09/2012 defendant plead guilty with diversion; 12/02/2013 diversion complete and charge dismissed | Washington County, OR | 1 year diversion successfully completed, charge dismissed |

The total criminal history score for the above criminal history is 0 and the corresponding Criminal History Category is I. PSR at ¶ 44.

**Government's Sentencing Memorandum**                                              **Page 5**

### E.  Government's Recommended Sentence

The parties jointly recommend 63 months prison followed by three years of supervised release.   The government makes this recommendation because the risks associated with defendant's behavior in the instant case show his connections with active Norteño members and his ability and readiness to sell dangerous firearms on the street.  Defendant's conduct illustrates that 63 months' imprisonment is appropriate to protect the public.

First, it is important to point out that when the UC told Christopher Hermens, an active Norteño member, that the UC needed guns, Hermens brought defendant as the gun dealer. During his firearm sale with the UC, defendant told the UC that defendant sold guns for a profit and that defendant would be able to serve as a source of switches to the UC in the future. Defendant explained to the UC that he had access to different types of firearms that he purchased "on the street".  Defendant demonstrated his knowledge of criminal conduct and avoiding additional criminal charges by explaining serial numbers on firearms saying, "I don't shave off any numbers 'cause that's a sentence right there".

Defendant's access and ability to purchase many different types of firearms and re-sell them for a profit regardless of the type of firearm or if the firearm has been equipped with a machinegun conversion device makes him especially dangerous.  Defendant's high-risk behavior of selling multiple different types of firearms: a Sig Sauer pistol, 2 Glock pistols, a Smith & Wesson pistol and an IWI 5.56 caliber rifle after the UC told defendant that the UC intends to sell the guns to a person who will commit crime illustrates a picture of a reckless individual who disregards public safety.   A 63-month prison sentence followed by three years of supervised release will protect the community from defendant's criminal behavior.

**Government's Sentencing Memorandum**                                                    **Page 6**

The parties recommend a prison sentence of 63 months followed by three years of supervised release because this is a sentence that is sufficient but not greater than necessary to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017); 18 U.S.C. §3553(a).

The nature and circumstances of the underlying offense demonstrate to the court that defendant should not be granted any benefit beyond the reductions already provided. Defendant's conduct of proudly explaining his access to firearms and ability to sell them on the street while selling the UC five guns demonstrates a disregard for public safety and he should be held accountable for his actions. The jointly recommended 63-month prison term followed by three years' supervised release should be imposed.

**F. Forfeiture**

As part of his plea agreement, defendant agreed to forfeit all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 853 including the Sig Sauer pistol, model P320 9mm; the Glock model 48 pistol; the Glock model 20 pistol; the Smith & Wesson model M&P pistol and the IWI rifle as set forth in Count Five of the Indictment.

**Government's Sentencing Memorandum**                                                                 **Page 7**

**CONCLUSION**

Based on the foregoing, the government urges that this Court impose the jointly recommended 63-month prison sentence, followed by three years' supervised release, subject to the standard conditions, plus the special conditions that have been recommended in the PSR, and imposition of a $100 fee assessment.

Dated: May 20, 2026.                      Respectfully submitted,

                                          SCOTT BRADFORD
                                          United States Attorney


                                          */s/ Nicole M. Bockelman*
                                          NICOLE M. BOCKELMAN, OSB #105934
                                          Assistant United States Attorneys